# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

RECEIVED OCT 14 2004 CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

### DEFENDANTS
RASMI KHADER ALMALLAH

(b) County of Residence of First _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed DALLAS
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

2230 H

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- X 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | X 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R & Truck | ☐ 820 Copyrights | X 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| x 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | xx 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 870 Taxes (U S Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret Inc Security Act | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- X 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S Civil Statute under which you are filing and write brief statement of cause Do not cite jurisdictional statutes unless diversity)

Section 340(a) Immigration and Nationality Act of 1952.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint
JURY DEMAND: ☐ Yes  X No

## VIII. RELATED CASE(S) IF ANY
(See instructions)

JUDGE _____ DOCKET NUMBER _____

DATE 10/14/04

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA,  )
  )
                Plaintiff,  )
  )
        v.  )
  )
RASMI KHADER ALMALLAH,  )
  )
                Defendant.  )

Civil Action No. _____

## COMPLAINT TO REVOKE NATURALIZATION

### I. JURISDICTION AND VENUE

1. This is an action under section 340(a) of the Immigration and Nationality Act of 1952, as amended (the "INA"), 8 U.S.C. § 1451(a), to revoke and set aside the order admitting the defendant to citizenship and to cancel defendant's certificate of naturalization.

2. The affidavit of Donna C. Chabot, an officer of the United States Immigration and Customs Enforcement ("ICE"), United States Department of Homeland Security ("DHS"), showing good cause for this action is attached as Exhibit A.

3. The plaintiff is the United States of America, and this Court has jurisdiction pursuant to Title 28, United States Code, Section 1345.

4. The defendant is a naturalized United States citizen whose last known residence is 876 Cotswolds Court, Richardson, Texas 75081-5061; therefore, venue is proper in this district. 8 U.S.C. § 1451(a).

### II. FACTUAL BACKGROUND

A. <u>Defendant's Marital History</u>

5. On December 21, 1981, defendant married Rose Marie Hawley, a United States citizen.

6. Defendant paid Ms. Hawley money to marry him and to help him obtain immigration

Complaint to Revoke
Naturalization - Page 1

status.

7. Defendant and Ms. Hawley never resided together as husband and wife.

8. The marriage between defendant and Ms. Hawley was a sham marriage entered into solely to circumvent the immigration laws and enable defendant to obtain immigration status.

B. <u>Defendant's Adjustment of Status Proceedings</u>

9. On March 9, 1982, Ms. Hawley filed with the Dallas District Office of the United States Immigration and Naturalization Service (the "INS")[1] a "Petition for Alien Relative," Form I-130, on behalf of defendant, seeking to classify defendant as her immediate relative based on their marriage.

10. This Petition was approved by the INS on March 9, 1982.

11. On March 9, 1982, defendant filed an "Application for Status as Permanent Resident," Form I-485, with the Dallas District of the INS seeking to adjust his status to that of a lawful permanent resident of the United States based on his marriage to Ms. Hawley.

12. Question 13(c) of this adjustment application asked defendant whether his wife, Ms. Hawley, resided with him or apart from him.

13. In response to Question 13(c), defendant represented that his wife resided with him.

14. On March 9, 1982, defendant was interviewed under oath by an officer of the INS regarding his application for adjustment of status.

15. During this interview, defendant testified about his marriage generally and specifically testified that he and Ms. Hawley resided together as husband and wife.

16. On June 8, 1982, the INS approved defendant's application for status as a permanent resident, based on his written application and the testimony he provided during his adjustment interview, and defendant was admitted as a permanent resident of the United States

---

[1] As of March 1, 2003, the INS ceased to exist and its functions were transferred to various agencies within DHS. <u>See</u> Homeland Security Act of 2002, §§ 441, 451, 471, Pub. L. No. 107-296, 116 Stat. 2135 (2002) (codified at 6 U.S.C. §§ 251, 271, 291). This transfer does not affect the issues in this case. Because Mr. Almallah's naturalization case was adjudicated before the transfer, this Complaint will reference the INS as necessary.

Complaint to Revoke
Naturalization - Page 2

as of that date.

C. <u>Defendant's Naturalization Proceedings</u>

17. On June 19, 1987, defendant filed with the Dallas District Office of the INS an "Application to File Petition for Naturalization," Form N-400.

18. Defendant filed his application based upon his eligibility for naturalization as a lawful permanent resident for at least five years. INA § 316; 8 U.S.C. § 1427.

19. Question 51 of the application asked whether defendant had ever given false testimony for the purpose of obtaining any benefits under the Immigration and Nationality Act.

20. In response to Question 51 of the application, defendant answered "No."

21. On January 29, 1988, defendant was interviewed under oath by an officer of the INS regarding his application for naturalization.

22. At this interview, defendant signed a sworn statement that the contents of his application were true.

23. On January 29, 1988, the INS approved defendant's application to file petition for naturalization, based on his written application and the testimony he provided during his naturalization interview.

24. Based on the approval of this application, defendant filed a "Petition for Naturalization," Form I-405, with the United States District Court for the Northern District of Texas in Dallas, Texas, on January 29, 1988.

25. Based upon his representations in the petition for naturalization, defendant took the oath of allegiance, was admitted to United States citizenship, and was issued Certificate of Naturalization No. 12446724 on July 29, 1988.

III. <u>THE RELEVANT LAW</u>

26. Under section 340(a) of the INA, 8 U.S.C. § 1451(a), defendant's naturalization must be revoked and his Certificate of Naturalization must be canceled if his naturalization was <u>either</u>:

(a)     illegally procured, <u>or</u>

(b) procured by concealment of a material fact or by willful misrepresentation.

## COUNT I

### Illegal Procurement of United States Citizenship: Not Lawfully Admitted for Permanent Residence Inadmissible at Time of Admission

27. Plaintiff realleges and incorporates by reference paragraphs 1 through 26 of this Complaint.

28. To be eligible for naturalization, an alien must be lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of the INA. See INA § 318, 8 U.S.C. § 1429; see also INA § 316(a)(1), 8 U.S.C. § 1427(a)(1).

29. A United States citizen can seek to classify his or her alien spouse as an immediate relative pursuant to section 201(b)(2)(A)(i) of the INA, 8 U.S.C. § 1151(b)(2)(A)(i),[2/] by filing a Petition for Alien Relative, Form I-130. See INA § 204(a)(1)(A)(i).[3/] Upon approval of the Form I-130, the alien spouse is eligible to apply for lawful permanent resident status.

30. However, a marriage entered into to circumvent the immigration laws, known as a "sham marriage," is not valid to confer immigration benefits. An individual who enters into a sham marriage, therefore, is not a spouse for immigration purposes. Accordingly, such a person is not eligible for classification as an immediate relative and thereby is not eligible for permanent residence based on that marriage.

31. As set forth in paragraphs 9-16, defendant adjusted his status to that of lawful permanent resident of the United States based upon his marriage to Rose Marie Hawley.

32. As set forth in paragraphs 5 through 8, defendant paid Rose Marie Hawley money to marry him and file immigration documents on his behalf. Defendant and Ms. Hawley never

---

[2/] Formerly codified as section 201(b) of the INA; 8 U.S.C. § 1151(b).

[3/] Formerly codified as section 204(a)(1); 8 U.S.C. § 1154(a)(1).

Complaint to Revoke
Naturalization - Page 4

resided to together as husband and wife. Defendant entered into a sham marriage with Rose Marie Hawley for the sole purpose of circumventing the immigration laws and obtaining his immigration status. See supra ¶¶ 5-8.

33. Because defendant's marriage to Ms. Hawley was not valid for immigration purposes, he was not eligible for classification as an immediate relative and was not eligible for permanent residence based on that marriage. Accordingly, at the time of his application for adjustment of status, defendant was inadmissible to the United States pursuant to section 212(a)(20) of the INA, 8 U.S.C. § 1182(a)(20),[4] because he was not then in possession of a valid document for admission.

34. Because defendant was not admissible to the United States, he was not lawfully admitted to the United States when he filed his application to file petition for naturalization on June 19, 1987, and prior to becoming a naturalized citizen on July 29, 1988.

35. Because defendant was not lawfully admitted for permanent residence in accordance with all applicable provisions of the INA, defendant was not eligible to naturalize. See INA § 318, 8 U.S.C. § 1429; see also INA § 316(a)(1), 8 U.S.C. § 1427(a)(1).

36. As a person ineligible to naturalize, defendant's naturalization was illegally procured and must be revoked, as provided for in section 340(a) of the INA, 8 U.S.C. § 1451(a).

### COUNT II

Illegal Procurement of United States Citizenship:
Not Lawfully Admitted for Permanent Residence
Procured Status by Fraud or Willful Misrepresentation

37. Plaintiff realleges and incorporates by reference paragraphs 1 through 36 of this Complaint.

---

[4] Now codified as section 212(a)(7)(A)(i)(I) of the INA, 8 U.S.C. § 1182(a)(7)(A)(i)(I).

Complaint to Revoke
Naturalization - Page 5

38. To be eligible for naturalization, an alien must be lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of the INA. See INA § 318, 8 U.S.C. § 1429; see also INA § 316(a)(1), 8 U.S.C. § 1427(a)(1).

39. As set forth in paragraphs 11 through 15, during his adjustment interview and on his application for status as permanent resident, defendant represented that his wife, Ms. Hawley, resided with him. That representation was false. Contrary to his representation, as set forth in paragraphs 5 through 8, defendant never resided with Ms. Hawley.

40. Defendant made this misrepresentation regarding residing with Ms. Hawley, knowing his representation was false and misleading. Accordingly, defendant made this misrepresentation willfully.

41. Defendant's misrepresentation was material to his application for status as permanent resident. Accordingly, defendant procured his permanent residence by fraud or by willful misrepresentation and concealment of a material fact.

42. Because defendant procured his permanent resident status by fraud or by willful misrepresentation and concealment of a material fact, defendant was inadmissible to the United States pursuant to section 212(a)(19) of the Act, 8 U.S.C. § 1182(a)(19).[5]

43. Because defendant was inadmissible to the United States, he was not lawfully admitted in accordance with all applicable provisions of the INA. Accordingly, defendant illegally procured his naturalization.

44. Because defendant illegally procured his naturalization, his naturalization must be revoked, as provided by section 340(a) of the INA, 8 U.S.C. § 1451(a).

//

---

[5] Now codified as section 212(a)(6)(C)(i) of the INA, 8 U.S.C. § 1182(a)(6)(C)(i).

Complaint to Revoke
Naturalization - Page 6

## COUNT III

### Procurement of United States Citizenship by Willful Misrepresentation or Concealment of a Material Fact

45. Plaintiff realleges and incorporates by reference paragraphs 1 through 44 of this Complaint.

46. As set forth in paragraphs 19 through 22, when he filed his naturalization application and when he signed his application at his naturalization interview, defendant represented that he had never provided false testimony for the purpose of obtaining any immigration benefit. Defendant misrepresented this fact. Contrary to his representation, as set forth in paragraphs 14 through 15, defendant falsely testified under oath at his adjustment interview on March 9, 1982, that he and his wife resided together as husband and wife.

47. Defendant made this misrepresentation regarding his prior false testimony knowing his representation was false and misleading. Accordingly, defendant made this misrepresentation willfully.

48. Defendant's misrepresentation during his naturalization process that he had never provided false testimony is a material fact. See INA §§ 316(a)(3), 318; 8 U.S.C. §§ 1427(a)(3), 1429. Accordingly, defendant procured his naturalization by willful misrepresentation and concealment of a material fact.

49. Because defendant procured his naturalization by willful misrepresentation and concealment of a material fact, his naturalization must be revoked, as provided by section 340(a) of the INA, 8 U.S.C. § 1451(a).

WHEREFORE, plaintiff demands:

Judgment revoking and setting aside the naturalization of defendant ordered by the

Complaint to Revoke
Naturalization - Page 7

Attorney General of the United States, admitting the defendant to United States citizenship, and canceling Certificate of Naturalization No. 12446724.

Judgment forever restraining and enjoining defendant from claiming any rights, privileges, or advantages under any document which evidences United States citizenship obtained as a result of defendant's July 29, 1988, naturalization.

Judgment requiring defendant to surrender and deliver his Certificate of Naturalization and any other indicia of United States citizenship, as well as any copies thereof in his possession, and to make good faith efforts to recover and then surrender any copies thereof that he knows are in the possession of others, to the Attorney General immediately.

Judgment granting plaintiff any other relief that may be lawful and proper.

Respectfully Submitted,

RICHARD B. ROPER
United States Attorney

JOHN PARKER
Assistant United States Attorney
Chief, Civil Division
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699

PETER D. KEISLER
Assistant Attorney General
Civil Division

THOMAS W. HUSSEY
Director
LINDA S. WERNERY
Senior Litigation Counsel

_____
ANGELA A. CRIDER
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
c/o Immigration and Customs Enforcement
P.O. Box 670049
Houston, Texas 77267-0049
Telephone: (281) 774-4731
Facsimile: (281) 774-5996
Texas Bar No. 00790530

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| WASHINGTON, D.C. ) | |
| ) | |
| In the Matter of the Revocation ) | AFFIDAVIT OF GOOD CAUSE |
| of the Naturalization of ) | |
| ) | |
| RASMI KHADER ALMALLAH ) | |
| A26-531-200 ) | |

I, Donna C. Chabot, declare under penalty of perjury as follows:

I. I am a Special Agent, U.S. Immigration and Customs Enforcement (ICE), U.S. Department of Homeland Security (DHS). In this capacity, I have access to the official records maintained by DHS, including the immigration file of Rasmi Khader Almallah, A26-531-200.

II. I have examined the records relating to Mr. Almallah. Accordingly, I state, on information and belief that the information set forth in this Affidavit of Good Cause is true and correct.

III. On June 19, 1987, Mr. Almallah filed an Application to File Petition for Naturalization, Form N-400, with the Dallas District Office of the Immigration and Naturalization Service (INS).[1] Mr. Almallah was interviewed, under oath, by an INS officer on January 29, 1988. On the basis of his written application and interview, his Application to File Petition for Naturalization was approved on January 29, 1988. Based on that approval, Mr. Almallah was allowed to petition the court for naturalization by completing Form N-405, Petition for Naturalization. Based on his approved Application to File Petition for Naturalization and his representations on the Petition for Naturalization, Mr. Almallah took the oath of

---

[1] As of March 1, 2003, the INS ceased to exist and its functions were transferred to various agencies within DHS. See Homeland Security Act of 2002, §§ 441, 451, 471, Pub. L. No. 107-296, 116 Stat. 2135 (2002) (codified at 6 U.S.C. §§ 251, 271, 291). This transfer does not affect the issues in this case. Because Mr. Almallah's naturalization case was adjudicated before the transfer, this Affidavit of Good Cause will reference the INS as necessary.

GOVERNMENT
EXHIBIT
A

allegiance and was admitted as a citizen of the United States on July 29, 1988. He was issued Certificate of Naturalization number 12446724.

IV. Mr. Almallah illegally procured his naturalization because he was not lawfully admitted for permanent residence in accordance with all applicable provisions of the Immigration and Nationality Act (INA), in that, when he was admitted to the United States as a lawful permanent resident, he was inadmissible to the United States.

A. Mr. Almallah was not admissible to the United States pursuant to section 212(a)(20) of the INA, 8 U.S.C. § 1182(a)(20),[2] because he was not in possession of a valid document for admission.

1. A U.S. citizen may seek to classify his or her alien spouse as an immediate relative by filing a Petition for Alien Relative, Form I-130. Upon approval of the Form I-130, the alien spouse is eligible to apply for lawful permanent resident status.

2. However, a marriage entered into to circumvent the immigration laws, known as a sham marriage, is not valid to confer immigration benefits. An individual who enters into a sham marriage, therefore, is not a spouse for immigration purposes. Accordingly, such a person is not eligible for classification as an immediate relative and thereby is not eligible for permanent residence based on that marriage.

3. On December 21, 1981, Mr. Almallah married Rose Marie Hawley, a U.S. citizen.

4. On March 9, 1982, Ms. Hawley filed a Petition for Alien Relative, Form I-130, on behalf of Mr. Almallah, seeking to classify Mr. Almallah as her

---

[2] Now codified as section 212(a)(7)(A)(i)(I) of the INA, 8 U.S.C. § 1182(a)(7)(A)(i)(I).

immediate relative based on their marriage. This petition was approved on March 9, 1982.

5. On March 9, 1982, Mr. Almallah also filed an Application for Status as Permanent Resident, Form I-485, seeking to become a lawful permanent resident of the United States based on his marriage to Ms. Hawley. Based on his approved petition classifying him as the immediate relative of a U.S. citizen, the information contained on his Form I-485, and the testimony provided during the I-485 interview, Mr. Almallah's application for permanent residence was approved on June 8, 1982, and he was admitted as a permanent resident of the United States as of that date.

6. However, the marriage between Ms. Hawley and Mr. Almallah was a sham marriage entered into to circumvent the immigration laws, as it was entered into solely to enable Mr. Almallah to obtain immigration benefits. Mr. Almallah paid Ms. Hawley money to marry him and help him obtain immigration status, which included filing of the appropriate forms with INS and appearing in person with Mr. Almallah for his immigration interview. Mr. Almallah and Ms. Hawley never resided together as husband and wife.

7. Because the marriage between Ms. Hawley and Mr. Almallah was not a valid marriage for immigration purposes, that marriage could not have conferred any immigration status to Mr. Almallah.

8. Mr. Almallah, therefore, was not eligible for classification as the immediate relative of a U.S. citizen. Accordingly, the petition approving his classification as an immediate relative was not in accordance with the INA.

9. Because Mr. Almallah was not eligible for classification as the immediate relative of Ms. Hawley, he was not eligible to become a lawful permanent resident of the United States.

10. Accordingly, Mr. Almallah was not lawfully admitted to the United States in accordance with all applicable provisions of the INA; therefore, he illegally procured his naturalization.

B. Mr. Almallah was not admissible to the United States pursuant to section 212(a)(19) of the INA, 8 U.S.C. § 1182(a)(19),[3] because he procured his status by fraud or willful misrepresentation of material facts.

1. An individual who procures a visa, other documentation, or entry into the United States by fraud or willful misrepresentation of material facts is inadmissible to the United States.

2. Mr. Almallah willfully misrepresented material facts on his Application for Status as Permanent Resident, Form I-485, and during his I-485 interview with the INS.

   a. On March 9, 1982, Mr. Almallah filed his Application for Status as Permanent Resident based on his marriage to Ms. Hawley. Question 13(c) of that application asked Mr. Almallah whether his wife, Ms. Hawley, resided with him or apart from him. Mr. Almallah represented that his wife resided with him. This representation was false because Mr. Almallah never resided with his wife, Ms. Hawley.

   b. Additionally, Mr. Almallah was interviewed by an officer on March 9, 1982 regarding his Application for Status as Permanent Resident.

---

[3] Now codified as section 212(a)(6)(C)(i) of the INA, 8 U.S.C. § 1182(a)(6)(C)(i).

During this interview, Mr. Almallah was placed under oath and was asked various questions about his marriage, including whether he and Ms. Hawley resided together. Mr. Almallah testified generally about his marriage to Ms. Hawley, and he also testified that he and Ms. Hawley resided together. Mr. Almallah's testimony during this interview was false because he had entered into the marriage to circumvent the immigration laws and never resided with Ms. Hawley.

3. Mr. Almallah's misrepresentations about his marriage were material to his Application for Permanent Residence because they had the natural tendency to influence the decision whether to approve his application. In fact, Mr. Almallah's misrepresentations concealed that he had never resided with Ms. Hawley, that he paid her to marry him, and that he entered into the marriage solely to obtain an immigration benefit and was, therefore, ineligible for permanent residence.

4. Accordingly, Mr. Almallah procured his permanent residence on account of his fraud and misrepresentations and he was inadmissible to the United States.

5. Because Mr. Almallah was inadmissible to the United States, he was not lawfully admitted to the U.S. in accordance with all applicable provisions of the INA; therefore, he illegally procured his naturalization.

V. Mr. Almallah procured his naturalization by willful misrepresentation and concealment of material facts.



A. Mr. Almallah willfully misrepresented and concealed material facts during the naturalization process.

    1. On his Application to File a Petition for Naturalization, Mr. Almallah represented that he had never provided false testimony for the purpose of obtaining any immigration benefit. On January 29, 1988, at the end of his naturalization interview, Mr. Almallah signed his naturalization application, thereby swearing that the information on the application was true.

    2. This representation was false because Mr. Almallah had provided false testimony to obtain an immigration benefit.

        a. On March 9, 1982, Mr. Almallah was interviewed by an officer of the INS regarding his marriage to Ms. Hawley. During this interview, Mr. Almallah was placed under oath and was asked various questions about his marriage, including whether he and Ms. Hawley resided together. Mr. Almallah testified generally about his marriage to Ms. Hawley, and he also testified that he and Ms. Hawley resided together.

        b. This testimony was false. In fact, Mr. Almallah never resided with Ms. Hawley, as the marriage was entered into solely to enable Mr. Almallah to obtain an immigration benefit.

        c. Accordingly, contrary to his representation, Mr. Almallah had provided false testimony to obtain an immigration benefit.

B. Mr. Almallah's misrepresentations about his marriage were material to determining his eligibility for naturalization because they would have had the natural tendency to

influence the INS decision whether to approve his application. In fact, the INS would not have approved Mr. Almallah's application if Mr. Almallah had been truthful about the fact that his marriage to Ms. Hawley had been entered into solely for immigration purposes, and was therefore invalid and fraudulent for immigration purposes.

C. Mr. Almallah procured his naturalization by misrepresenting and concealing material facts regarding his marriage to Ms. Hawley.

VI. Based on the facts outlined in paragraphs III through V, good cause exists to institute proceedings pursuant to Section 340(a) of the INA, 8 U.S.C. § 1451(a), to revoke Mr. Almallah's citizenship, and to cancel his Certificate of Naturalization.

VII. Mr. Almallah's last place of residence is 876 Cotswolds Court, Richardson, Texas 75081-5061.

### DECLARATION IN LIEU OF JURAT
(28 U.S.C. Section 1746)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on Sept. 29, 2004.

*[signature]*
Donna C. Chabot
Special Agent
Immigration and Customs Enforcement
Department of Homeland Security